UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CT-3044-BO

| | | |
|---|---|---|
| CASEY RAFAEL TYLER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| CARLTON B. JOYNER, et al., | ) | |
| Defendants. | ) | |

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by Casey Rafael Tyler ("plaintiff").[1] The matter is now before the court for a frivolity determination. 28 U.S.C. § 1915(e)(2). In reviewing a case, "the court shall dismiss the case at any time if the court determines that ... the action ... is frivolous or malicious; fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i-iii). A case is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

---

[1] The amended complaint [D.E.12] of August 14, 2014, is ALLOWED and fully considered within this review.

Plaintiff appears to set out several issues. First, he claims that his placement into segregation on maximum control violates his constitutional rights. Compl., ¶¶ 12-29; Am. Compl., ¶¶ 13-29. Second, the grievance process by which he has contested his placement into segregation is flawed. Id., ¶¶ 14-24; AM. Compl., ¶¶ 15-26. Third, he was unconstitutionally placed on the Special Management Meal (nutraloaf) diet for one day. Id., ¶ 25 (plaintiff states he "is currently litigating, in this very District Court, the constitutionality of the use of Nutraloaf on him by the defendants . . . Tyler v. Lasstier, No. 5:13-CT-3139-FL); Am. Compl., ¶ 22. Fourth, on November 15, 2013, due to his status or placement into "MCON" he was denied the receipt of one hardback comic book "Zombie." Id. ¶ 26; AM. Compl., ¶ 23. Fifth, on November 3, 2013, another inmate flooded the cell above plaintiff's, plaintiff's cell was flooded, his Bible and lexicon were damaged, two guards helped him pack and move to another cell, and plaintiff has filed a grievance. Id. ¶ 27. This again occurred on February 21, 2014. Am. Compl., ¶ 29. Sixth, due to his segregation he is unable to buy headphones for his radio unless he purchases a new radio that comes with headphones. Id. ¶ 28; Am. Compl., ¶ 25. Tyler names eleven defendants to the suit: Warden Carlton B. Joyner; Manager of Classification Marshal Pike; Program Director Frederick Strickland; Director of Classification Authority Annette Jones; Case Manager Cathy Judge; Chairman of the FCC at Central Prison Talena Lee; Case Manager Ryan Smith; Case Manager Abraham Monk; Case Manager Dennis Rowland; Case Manager Keith Granderson; and Case Manager Katherine Mitchell. Tyler seeks declaratory relief, nominal relief, a compensatory award of $50,000 against each defendant except Talena Lee from whom he seeks a $5,000 award, punitive damages of $200,000 against each defendant except Talena Lee from whom he seeks a $ 40,000 award, and attorney's fees.

There are numerous reasons that this case is properly dismissed on the frivolity review. To begin, defendants appear to be named in their capacity as supervisors. See Compl., III. Defendants (setting out each defendants' role with the prison). However, liability under § 1983 must be based on more than merely the right to control employees. Polk Co. v. Dodson, 454 U.S. 312, 325–26 (1981); Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). Liability cannot be premised on mere allegations of respondeat superior. Monell, 436 U.S. at 691; Polk, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. See e.g. Leach v. Shelby Co. Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989); Hays v. Jefferson, 668 F.2d 869, 874 (6th Cir.1982); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.1984).

Supervisory officials can be held liable for the acts of their subordinates only if a plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. See, e.g., Leach, 891 F.2d at 1246; Hayes v. Vessey, 777 F.2d 1149, 1154 (6th Cir.1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. Leach, 891 F.2d at 1246. At a minimum, the official must have knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. See, e.g., Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir. 1992). Additionally, plaintiff must show that defendant had some duty or authority to act. See e.g. Birrell v. Brown, 867 F.2d

3

956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); Ghandi v. Police Dept. of City of Detroit, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act). Again, supervisory liability claims cannot be based on simple negligence. Leach, 891 F.2d at 1246; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich.1989), aff'd, 915 F.2d 1574 (6th Cir.1990). Moreover, to be liable under section 1983, plaintiffs must show that defendants "acted personally" to deprive plaintiffs of their constitutional rights. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Accordingly, defendants may be dismissed on this basis.

The court next turns to the six substantive claims themselves. First, as for challenging placement into segregation, a plaintiff does not have a constitutional right to custody classification. Specifically, changes in conditions of incarceration-such as alteration of an inmate's security classification and consequent loss of privileges-are not additional punishments for the original offense in part because the sentence is not being increased beyond that originally imposed. See Sandin v. Connor, 515 U.S. 472, 485-86 (1995); Meachum v. Fano, 427 U.S. 215, 225 (1976); Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999); See Stiver v. Meko, 130 F.3d 574, 578-79 (3d Cir. 1997); O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991). The claim is dismissed.

The second claim challenges the grievance process within the prison. However, the state grievance procedure does not confer a substantive right upon inmates. Thus, the alleged failure of detention officials to properly handle plaintiff's grievance forms does not raise an actionable claim under § 1983. See Daye v. Rubenstein, 417 Fed. App'x 317, *2 (4th Cir. 2011) (unpublished); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

4
Case 5:14-ct-03044-BO   Document 13   Filed 12/01/14   Page 4 of 11

Furthermore, if plaintiff is alleging Due Process violations stemming from unfair administrative disciplinary proceedings, the claim fails. In a prison disciplinary hearing which results in the loss of good time credits,[2] the procedural due process safeguards are: (1) written notice of the charges; (2) a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so. Wolff v. McDonnell, 418 U.S. 539, 565-66 (1974). However, plaintiff does not contend he was not given proper procedural due process within the disciplinary hearing.

Plaintiff's claim appears to go to either the validity of the disciplinary finding or the placement into segregation. The Supreme Court has stated that a decision by a disciplinary board to revoke good-time credits passes scrutiny under the Due Process Clause if there is some evidence in the record to support the conclusions. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence to support such a conviction, nor any other standard greater than some evidence applies in this context." Id. at 456 (internal citations omitted). Federal courts will not review the entire record, weigh evidence, or assess witness credibility. Id. at 455-56. A disciplinary board's findings will be disturbed only when unsupported by any evidence or wholly

---

[2] The court notes that it is not even clear whether good time credit was taken from plaintiff as a result of the disciplinary infraction.

5

arbitrary and capricious. Id. at 457; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir.1990) (record of prison disciplinary hearing need not establish reliability of confidential informant to meet "some evidence" standard.) The second claim is dismissed.

Plaintiff's third claim is that he was unconstitutionally placed on the Special Management Meal (nutraloaf) diet for one day. Id., ¶ 25. However, plaintiff explains that he "is currently litigating, in this very District Court, the constitutionality of the use of Nutraloaf on him by the defendants." Id., (citing Tyler v. Lasstier, No. 5:13-CT-3139-FL). A review of the docket in that case reveals the matter was filed prior to the filing of the suit now before the undersigned and dispositive motions are pending. Based upon the foregoing, the instant claim is dismissed without prejudice as duplicative. See Richardson v. Thompson, No. 4:04-1256-27, 2004 WL 3316381, *3-4 (D.S.C. Oct. 7, 2004), aff'd 124 F. App'x 795 (4th Cir. Mar. 30, 2005); see also Wolfe v. Cooper, No. 8:08-3559-PMD, 2008 WL 4960237, *3 (D.S.C. Nov. 20, 2008) (dismissing complaint as duplicative).

Plaintiff's fourth claim is that on November 15, 2013, due to his status or placement into "MCON" he was denied the receipt of one hardback comic book entitled "Zombie." The court dismisses the claim.

As a prison inmate, plaintiff retains certain First Amendment rights, including the right to receive written publications. Thornburgh v. Abbott, 490 U.S. 401, 407-408 (1989). However, an inmate's constitutional rights are not unrestricted. Prisons may adopt regulations that infringe upon an inmate's constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 87 (1987). In order to determine whether the regulation relied on by the defendants is constitutionally permissible, the court must

6

consider four factors: (1) whether the disputed regulation is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Turner, 482 U.S. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir.1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

In Thornburgh v. Abbott, 490 U.S. 401 (1989), a class of federal prisoners and publishers challenged a Federal Bureau of Prisons regulation that permitted prison officials to deny inmates possession of incoming publications if they were deemed "detrimental to institutional security." 490 U.S. at 403 (citing 28 C.F.R. § 540.71(b)). The Supreme Court upheld the regulation, observing that the legitimacy of the security concern was "beyond question," id. at 415, that the regulation was reasonably related to that concern because "[w]here the regulations at issue concern the entry of materials into the prison . . . a regulation which gives prison authorities broad discretion is appropriate," id. at 416–17, that the plaintiffs' rights were not impermissibly restricted because the regulation still permitted the inmates to receive "a broad range of publications," id. at 419, and that there was a great likelihood that the materials would be recirculated within the prison, which would cause prison officials to expend limited resources to further restrict the freedom of other inmates. Id.

7

Likewise, the Fourth Circuit has observed that, in formulating the Turner analysis, "the Supreme Court chose the most deferential possible standard of review for cases presenting prison administration issues." In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir.1999). Prison officials " 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " Id. (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). Finally, "when a state correctional institution is involved, the deference of a federal court is even more appropriate." In re Long Term, 174 F.3d at 469.

The North Carolina Department of Correction ("DOC") has a compelling governmental interest in maintaining security, discipline, and order. See McRae v. Johnson, 261 Fed. App'x 554, 558 (4th Cir. 2008) (per curiam) (unpublished); Hines v. South Carolina Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998). Tyler states that he is in a high security custody status, and that while in this status he has been precluded from receiving a single hardback comic book. Tyler clearly articulates that he has not been precluded from other publications or mail, but a single book on one date. He further states that the book was precluded on the basis of being a hardback book, which is specifically prohibited within HCON per prison policy for security reasons if not a religious or legal publication.[3] Compl., Ex. 36; see, e.g., Floyd v. Hergenrother, 2012 WL

---

[3]Tyler includes the policy and other exhibits in his attachments. See, Compl. and Am. Compl. The policy does not allow for "hardbound publications (other than legal or religious publications) and all spiral-bound publications . . . [for inmates] assigned to H-con, M-con, or Disciplinary Segregation." Ex. 36. The court further notes that while the attached exhibit discusses the prohibition of another hardbound book while in M-con, the prohibition of that hardback book again fails to violate any constitutional protection of Tyler's.

8

2091175 (W.D.N.C. 2012); Roberts v. Shearin, 2010 WL 3517019 *2-10 (D. Md. 2010) (unpublished). This fails to state a claim.

Plaintiff's fifth claim is that his cell was flooded, guards helped him pack and move, yet some of this property was damaged. As for this deprivation, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Here, an adequate post-deprivation remedy exist. See, e.g., Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir.1983). Because Tyler has a meaningful post-deprivation remedy available in state court, this claim fails. Furthermore, the "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986) (emphasis removed); see McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir. 1986). "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." Davis v. Scherer, 468 U.S. 183, 194 (1984). What is articulated in this claim is that on one occasion, an inmate flooded his cell resulting in the flooding of Tyler's cell, which led to the loss or damage of several items of Tyler's personal property. This is not an actionable claim, and it is dismissed.

Lastly, plaintiff raises an issue that due to his status he is unable to buy headphones for his radio but must buy a radio that comes with headphones. However, the imposition of security measures that limit privileges within a particular institution are merely "part of the penalty that criminal offenders pay for their offenses against society" and, do not state a cognizable claim for

relief under the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Furthermore, while being confined in segregation may be restrictive and inconvenient, Tyler does not allege that he has suffered a serious mental or physical injury as a result of his conditions of confinement in segregation as required under Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir.1993), and there is no indication that the conditions pose an unreasonable risk of serious harm. See also In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d at 471-72 (finding that long-term placement in segregation or maximum custody is not cruel and unusual punishment). Here, Tyler seeks to purchase headphones for the radio he presently possesses. According to Tyler, due to his status he may not do so, but has been given the alternative remedy of purchasing a radio that has headphones. The court finds that while this alternative may not been ideal to Tyler, he has not been fully precluded from possessing his electronic device, and no claim as been presented.

Lastly, any allegation regarding his limited paper, envelope, pens, and/or postage reference is meritless. Plaintiff does not allege facts which breach constitutionally protected parameters on the part of defendants. Inmates do have a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Ex Parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). However, in order to state a claim for denial of access to the courts, the inmate must show actual injury or that defendants' conduct hindered his efforts to pursue a legal claim or show actual harm. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–54 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc); American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785-86 (4th Cir. 1993). Isolated incidents

without negative consequences to plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (occasional accidental opening of legal mail does not state of claim of the denial of one's right to the access of court). The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an absolute deprivation of access to all legal materials." Lewis, 518 U.S. at 353 n. 4 (emphasis in original). Plaintiff has failed to allege any actual injury supported by what appears to be an unfettered ability to communicate with this court in this suit and others.

In an abundance of caution, the court also finds that any allegations not specifically set out and addressed are too generalized and conclusory, without a basis in fact, meritless, and likewise dismissed. White v. White, 886 F.2d 721, 724 (4th Cir. 1989) (pro se litigant complaints must be liberally construed; however, a minimum level of factual support is required); see also Adams v. Rice, 40 F.3d at 74 (conclusory allegations of retaliation are frivolous).

Accordingly, the amended complaint [D.E. 12] is ALLOWED; however, the claims and case are dismissed as frivolous. All other pending motions [D.E. 9] are DENIED as MOOT. Having so determined the The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this the __1__ day of December 2014.

TERRENCE W. BOYLE
United States District Judge